## *In re* JACKSON, Bankrupt.

*(District Court, S. D. New York.* November 16, 1881.)

1. INJUNCTION DISSOLVED—SECTION 5057—LIMITATIONS—FRAUDULENT JUDGMENT.
   An injunction should be dissolved when it can no longer subserve any useful purpose.

   Where, prior to proceedings in bankruptcy, several executions had been levied on the bankrupt's property, and the sheriff had advertised it for sale thereunder, when he was stayed by injunction issued in the bankruptcy proceedings, but was afterwards allowed to sell and hold the proceeds, subject to the order of the court; and after paying certain prior executions, about which there was no controversy, there remained in the sheriff's hands $611, applicable next in order upon a judgment and execution of M.; but it was claimed by the assignee in bankruptcy, and also by certain subsequent execution creditors, that M.'s judgment was fraudulent and fictitious, and M.'s proceedings under it had been stayed since 1874, and the assignee, though knowing the facts since 1875, had taken no steps to assail M.'s judgment,—*held*, that the assignee's right to attack M.'s judgment had, under section 5057, long since expired, and that the injunction should now be dissolved.

In Bankruptcy.

*Jas. Armstrong,* for the motion.

*Jas. G. Graham,* for the assignee.

*Darwin W. Esmond,* for creditors.

BROWN, D. J. Markowitz, the moving creditor, by virtue of a judgment, execution, and levy prior to the commencement of proceedings in bankruptcy, obtained a legal lien upon the goods and chattels of the bankrupt. The goods were under advertisement for sale under this execution, and others, at the time of the filing of the petition in bankruptcy, on December 8, 1874. On that day an injunction was issued out of this court in those proceedings, restraining further proceedings by the sheriff. Afterwards it was so modified as to permit the sheriff to sell all the goods and chattels of the bankrupt levied on, and to retain the proceeds to abide the further order of the court. He was also permitted to pay two judgments prior to that of Markowitz, there being no controversy about them. After paying those judgments and the expenses of sale, a net balance of $611.39 remained in his hands, which was then, and has ever since been, claimed by Markowitz under his judgment of $2,040, which was next in order of lien. Payment to him has been prevented by the original injunction, which, as respects this judgment, has never been vacated, it being claimed, not only on behalf of the assignee in bankruptcy, but also in behalf of two subsequent judgment creditors, that that judgment was fraudulent and collusive, and designed to give an unlawful preference to Markowitz, who is a brother-in-law of the bankrupt.

The assignee in bankruptcy was chosen on March 25, 1875. On the nineteenth day of April, 1875, he applied to this court for an order upon the sheriff to show cause why the balance of $611.39 should not be paid to him as assignee. The order was refused by Judge Blatchford, who indorsed upon the papers that the relief must be obtained by plenary suit. The money in the sheriff's hands stands in the place of goods which were already subject to the lien of the judgment at the time of the commencement of the proceedings in bankruptcy. If the judgment was collusive, and designed to give a fraudulent preference, as alleged, it was voidable at the suit of the assignee. Such a suit by him to displace the apparent legal lien of the judgment, and to recover the property for the use of the general creditors, would be within section 5057 of the Revised Statutes, because against a person claiming an adverse interest touching rights of property transferable to or vested in the assignee. Had the assignee possessed himself of the goods or the proceeds, notwithstanding this lien, the judgment creditor must have been limited to two years in which to assert his right to the goods; and the assignee must be held limited to a like period from the time of his discovery of the fraud or illegality. *Bailey* v. *Glover*, 21 Wall. 342.

The papers on file, referred to on this motion, show that in April, 1875, the assignee, in his original application for the balance of the money, was apprised of the alleged collusion and fraudulent character of the judgment. The affidavit of Clark, the attorney of the petitioning creditors, not only stated the fact, but gave some evidence of it. No suit, however, has ever been commenced to assail the legal lien of this judgment. More than six years have elapsed since the charge of its fraudulent character was made by the assignee, and since he was apprised by the court that it could be assailed only by plenary suit. The assignee has appeared in opposition to this motion, but there is no evidence that he is any better prepared to commence such a suit now than he was six years ago, or is even proposing to recover this money. No reason appears why such suit should not have been commenced long ago, if it was desired or intended to contest the lien of this judgment, except, possibly, the assignee's want of the necessary funds to do so, which it must be assumed the creditors were not willing to advance. This cannot extend the statute of limitations. The object of the statute was to secure the speedy liquidation of bankrupts' estates. The injunction of December 8, 1874, was not an injunction upon the assignee's proceedings, but was for the benefit of the assignee to be thereafter chosen. He has not availed himself of

it in the only way it could become beneficial to the estate,—by a suit to set aside the judgment and obtain the money,—and the time for doing so has long since passed.

I cannot perceive anything possibly useful to the bankrupt's estate in continuing the injunction longer, and it ought, therefore, to be dissolved. By the operation of the statute of limitations the question of the validity of the judgment has long since passed beyond the scope of proceedings in bankruptcy; and the special interest of the two subsequent judgment creditors, in contesting the judgment, cannot be here considered, as it does not concern the general creditors.

The motion should be granted.